UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, *and* APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND, *the* CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK, *and the* NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS,

                Petitioners,

– *against* –

EXCEL INTERIORS ASSOCIATES INC.,

                Respondent.

**OPINION & ORDER**

21-cv-5394 (ER)

RAMOS, D.J.:

    Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, Carpenter Contractor Alliance of Metropolitan New York (the "Funds"), and the New York City District Council of Carpenters (the "Union") (and together with the Funds, the "Petitioners"), petition this Court to confirm an arbitration award issued in their favor and against Excel Interiors Associates, Inc. ("Excel"), an employer. Doc. 1. The award directed Excel to pay $452,253.83 for violating a collective bargaining agreement when it failed to permit the Funds to audit its books and records. Doc. 1-6. Petitioners invoke the Court's jurisdiction under 29 U.S.C. § 185. Doc. 1 at 1–2.

Before the Court is Petitioners' motion for summary judgment seeking to confirm the arbitration award.[1] Doc. 1. For the reasons stated below, Petitioners' motion is GRANTED.

## I. BACKGROUND

### A. Factual Background[2]

#### 1. *The Parties*

Petitioners Trustees of the New York City District Council of Carpenters Pension, Welfare, Annuity, Apprenticeship, Journeyman Retraining and Educational and Industry Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act of 1974 ("ERISA"). ¶ 4. The Trustees are fiduciaries of the ERISA Funds within the meaning of § 3(21) of ERISA, 29 U.S.C. § 1002(21). *Id.* The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York. *Id.*

Petitioners Trustees of the New York City District Council of Carpenters Relief and Charity Fund (the "Charity Fund") are Trustees of a charitable organization established under § 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). ¶ 5. The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York. *Id.*

Petitioner Carpenter Contractor Alliance of Metropolitan New York ("CAA") is a New York not-for-profit corporation. ¶ 6. CAA Metro maintains its principal place of business at 245 5th Avenue Suite, 901, New York, New York. *Id.*

Petitioner Union is a labor organization that represents employees in an industry affecting commerce within the meaning of § 501 of the Labor Management Relations Act

---

[1] On August 19, 2021, the Court granted Petitioner's request to treat the petition as an unopposed motion for summary judgment. *See* Doc. 10

[2] Unless otherwise noted, citations to "¶ _" refer to the petition to confirm arbitration, Doc. 1.

2

("LMRA"), 29 U.S.C. § 142, and is the certified bargaining representative for certain employees of Excel. ¶ 7

Petitioners allege upon information and belief that Excel is a New York corporation with its principal place of business 77 Plave Avenue, Staten Island, NY. ¶ 8. At relevant times, Excel was an employer within the meaning of § 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of § 501 of the LMRA, 29 U.S.C. § 142. *Id.*

2. *The Collective Bargaining Agreement*

On February 9, 2005, Excel became a member of the Association of Wall Ceiling & Carpentry Industries of New York, Inc. (the "Association"). ¶ 9; Doc. 1-1 (memo from the Association to the Union confirming Excel's membership). As a member of the Association, Excel agreed to be bound to all of the agreements entered into between the Association and the Union, ¶ 10, including a collective bargaining agreement entered into between the Association and the Union covering the period between July 1, 2017 to June 30, 2024 (the "CBA"). *Id.*; Doc. 1-2 (copy of the collective bargaining agreement).

On August 7, 2019, Excel purported to withdraw from the Association. ¶ 11; Doc. 1-3 (memo from the Association to the Union confirming Excel's withdrawal). However, the CBA provides that "[a]ll Employer-members who have given their assent to be bound to this agreement shall be bound during its entire term." *See* Doc. 1-2 at 4. The CBA is still in effect and will not expire until June 30, 2024. ¶ 13; Doc. 1-2 at 54.

The CBA requires Excel to make contributions to the Funds for each hour worked for all employees within the trade and geographical jurisdiction covered by the CBA. Doc. 1-2 at 35. The CBA also requires Excel to provide its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with the required benefit fund contributions. *Id.* at 36. Furthermore, the CBA binds employers to the policies and regulations adopted by the Funds' Trustees. *Id.* at 39.

The Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). [3] ¶ 18; Doc. 1-4 (copy of Collection Policy).  Under this Collection Policy, in the event an employer refused to comply with the CBA's audit procedures, the Funds:

> "shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period…[a] determination under this paragraph shall constitute presumptive evidence of delinquency."

Doc. 1-4 at 6–7.

The CBA provides that in the event "any dispute or disagreement arise between the parties . . . and any Employer signatory hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder[.]" Doc. 1-2 at 41.  The CBA further provides that "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by submission and to fashion an appropriate remedy including, but not limited to, monetary damages. *Id.* at 42.

The CBA states that "the arbitrator shall be empowered to award such interest, liquidated damages, and/or costs as may be applicable under this Agreement and Declaration of Trust establishing such Fund(s)." Doc. 1-2 at 48.  The CBA and Collection Policy further provide that, should the Funds be required to arbitrate a dispute or file a lawsuit against an employer, the Funds shall be entitled to collect, in addition to the delinquent contributions:  (1) interest on the unpaid contributions;[4] (2) liquidated

---

[3] The policy is undated, but notes that the Funds "hereby adopts the following revised policy . . . for the collection of employer contributions on this ___ day of January, 2016."  Doc. 1-4 at 1.

[4] Specifically, the Collection Policy provides that ""[i]nterest owed by a delinquent employer shall be calculated at the prime lending rate of Citibank plus 200 basis points, compounded daily, on a declining principal basis . . . [I]nterest shall continue to accrue to the date when payment of the delinquent contributions is received."  Doc. 1-4 at 8.

4

damages in the amount of 20% of the unpaid contributions; and (3) reasonable costs and attorneys' fees incurred by the Funds in collecting the delinquencies. *See* Doc. 1-2 at 40–41; Doc. 1-4 at 8.

### 3. The Arbitration and Arbitration Award

Petitioners requested an audit of Excel covering the period from July 1, 2017 to June 21, 2021 in order to determine whether Excel had remitted the proper amount of contributions to the Funds. ¶ 25. When Excel refused to provide its books and records, the Funds conducted an estimated audit pursuant to the Collection Policy, which found that Excel failed to remit $332, 967.18 in contributions. ¶ 27. Petitioners then initiated arbitration proceedings. ¶ 28. The arbitrator, Roger E. Maher, noticed the arbitration by mailing a notice of hearing to Excel by regular and certified mail. ¶ 28; Doc. 1-5 (copy of Notice of Hearing). Maher held a hearing on February 4, 2021, at which Excel did not appear. Doc. 1-6 at 1 (Opinion and Default Award of Arbitrator). On February 6. 2021, Maher issued his opinion. *Id.* Specifically, Maher found that Excel failed to permit the Funds to audit its books and records and ordered it to pay the Funds the sum of $452,253.83 (the "Award"), consisting of: (1) the estimated principal deficiency of $332,967.18, (2) interest thereon of $49,793.21, (3) liquidated damages of $66,593.44, (4) court costs of $400, (5) attorney's fees of $1,500, and (6) an arbitrator's fee of $1,000. *Id*. at 2–3. Maher also found that interest at the rate of 5.25% would accrue on the Award from the date that it was issued. *Id*. at 3. Excel has, to date, failed to pay any portion of the award. ¶ 32.

### B. Procedural History

The Funds and the Union filed the instant petition to confirm the arbitration award on June 18. 2021. Doc. 1. Pursuant to 29 U.S.C. § 185 and 9 U.S.C. § 9, they seek confirmation of the Award, post-judgment interest, and costs and attorneys' fees.[5] Doc.

---

[5] Petitioners request attorneys' fees in the amount of $1,867.50 and costs in the amount of $75. Doc. 1-5 at 7.

1-5 at 7. They served Excel on June 23, 2021, through delivery of the petition and summons to an authorized agent in the Office of the Secretary of State. Doc. 8. Excel failed to answer or respond within 21 days. On August 19, 2021, Petitioners filed a letter to request that the petition be reviewed as a motion to confirm the arbitration award and be deemed unopposed. Doc. 9. That same date, the Court entered an Order stating it would treat the petition as an unopposed motion for summary judgment. Doc. 10.

As of this date, Excel has failed to oppose the petition or otherwise appear in this action.

## II.   LEGAL STANDARD

### A.  Standard for Confirming Arbitration Award

Confirmation of an arbitral award normally takes the form of a summary proceeding that converts a final arbitration award into a judgment of the Court. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). The Court is required to grant the award unless it is vacated, modified, or corrected. *Id.* (quoting 9 U.S.C. § 9). An application for a judicial decree confirming an award receives "streamlined treatment as a motion, obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

In order to promote the goals of arbitration, which consist of "settling disputes efficiently and avoiding long and expensive litigation," arbitration awards "are subject to very limited review." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (internal punctuation and quotation marks omitted). It is not necessary that the arbitrator explain the rationale for the award; the award "should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted). In short, as long as there is "a barely colorable justification for the outcome reached," a court should enforce an arbitration award—even if it disagrees with it on the merits.

*Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992) (internal citation and quotation marks omitted).

### B. Summary Judgment Standard

An unanswered petition to confirm an arbitration award is to be treated "as an unopposed motion for summary judgment." *D.H. Blair & Co.*, 462 F.3d at 110; *see also Trs. for The Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Earth Constr. Corp.*, No.15-cv-3967 (RA), 2016 WL 1064625, at *3 (S.D.N.Y. Mar. 15, 2016) (internal quotation and alterations omitted) ("A district court should treat an unanswered petition to confirm or vacate as an unopposed motion for summary judgment and base its judgment on the record.").

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.*

Even if a motion for summary judgment is unopposed, courts are required to "review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). "[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted).

### III.  DISCUSSION

#### A.  Confirmation of the Award

The Court has conducted a limited review of the CBA, the Collection Policy, the arbitration provisions entered into by the parties, as well as the ensuing arbitration award. As a member of the Association, Excel agreed to be bound by the CBA. ¶ 10. While Excel withdrew from the Association in 2019, the CBA provides that in such situations, employers are still bound to the CBA "during its entire term." *See* Doc. 1-2 at 4. Accordingly, Excel is still bound by the CBA, which expires on June 30, 2024. Doc. 1-2 at 54.

The CBA provides that in the event of any dispute with an employer, such as Excel, "concerning any claim arising from payments to the Fund," arbitration is an available remedy. Doc. 1-2 at 41. It further provides that the arbitrator has "full and complete authority" to decide any and all issues raised, and to "fashion an appropriate remedy including but not limited to monetary damages." *Id.* at 42.

Despite being provided prior notice, a representative of Excel did not attend the February 4, 2021 arbitration hearing. ¶ 28; Doc. 1-5 (copy of Notice of Hearing). After considering the evidence before him, Maher concluded that Excel violated the CBA when it failed to permit the Funds to audit its books and records and ordered Excel to pay the Funds the Award. Doc. 1-6 at 2–3.

There is no indication that this decision was made arbitrarily, that it exceeded the Committee's jurisdiction under the CBA, or that it was contrary to law. *See Trs. of New*

*York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12-cv-005 (JMF), 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party."); *see also Seaport Global; Holdings LLC. v. Petaquilla Minerals Ltd.*, No. 19-cv-9347 (ER), 2020 WL 2747729, at *4 (S.D.N.Y. May 27, 2020).

Accordingly, the Court finds that based on the record provided, together with the appropriate narrow level of review, there is no disputed material issue of fact and the arbitration award should be confirmed. *See Landy*, 954 F.2d at 797 ("[A]n arbitration award should be enforced . . . if there is 'a barely colorable justification for the outcome reached.'" (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978))).

### B. Attorneys' Fees and Costs

Petitioners also seek to recover an award of attorneys' fees and costs for the instant litigation, as well as post-judgment interest. Doc. 1-5 at 7.

"Courts have routinely awarded attorneys['] fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Trs. of New York City Dist. Council of Carpenters Pension Fund v. Alliance Workroom Corp.*, No. 13-cv-5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) (*quoting Abondolo v. H. & M.S. Meat Corp.*, No. 07-cv-3870 (RJS), 2008 WL 2047612, at * 4 (S.D.N.Y. May 12, 2008)) (collecting cases). Here, Excel did not abide by the arbitration award and failed to participate in this action. ¶ 32. Therefore, the Court finds that an award of attorneys' fees and costs in connection with this action is merited.

The Second Circuit has held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a "presumptively reasonable fee." *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)

9

(quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). A "reasonable hourly rate" is a rate "in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (internal quotation marks omitted).

In this case, counsel for Petitioners, Virginia & Ambinder, LLP ("V&A"), billed the Funds for the services of partners at a rate of $350 per hour and for the services of associates at a rate of $275 per hour. ¶¶ 38–40. The rate is within the range of reasonable rates awarded by courts in similar cases involving attorneys with comparable experience. *See e.g.*, *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 267 (E.D.N.Y. 2008) (applying S.D.N.Y. rates and awarding rates of $250 for associates and $400 for partner in petition to confirm arbitration award). In sum, the Court finds that the requested hourly rates are reasonable.

Additionally, having reviewed the records supporting the requested fees, which indicate that 6.30 hours of attorney work were completed in this matter, the Court finds the requested total of $1,867.50 in attorneys' fees is reasonable. *See* Doc. 1-7 (listing the total hours spent on various litigation tasks and calculating the lodestar amount). The Court also finds reasonable the requested $75 in costs, which is based on the service fees incurred in this action. ¶ 43.

Accordingly, an award of $1,942.50 in attorneys' fees and costs to Petitioners is reasonable. The Court also grants post-judgment interest pursuant to 28 U.S.C. § 1961(a). *See Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.").

IV. **CONCLUSION**

For the foregoing reasons, the Petitioners' motion for summary judgment is GRANTED. The arbitration award is CONFIRMED, and the Clerk of Court is directed

to enter judgment in favor of Petitioners in the amount of $452,253.83 plus interest from the date of the arbitration award, February 6, 2021, through the date of judgment with interest to accrue at the annual rate of 5.25%.

The Court also GRANTS Petitioners' request for attorneys' fees and costs in the amount of $1,942.50. This judgment shall accrue post-judgment interest as mandated in 28 U.S.C. § 1961.

The Clerk of Court is respectfully directed to close the case.

It is SO ORDERED.

Dated:   June 11, 2024
         New York, New York

                                              _____
                                              EDGARDO RAMOS, U.S.D.J.